## KAHN v. STATE LAND OFFICE BOARD.

1. TAXATION—STATE LAND OFFICE BOARD ACT—RULES AND REGULATIONS.

The State land office board has a right to make reasonable rules and regulations necessary to carry out the purposes and provisions of the act by which the board was created, and which authorized it to dispose of lands to which the State acquired title through tax sales (Act No. 155, § 11, Pub. Acts 1937).

2. OFFICERS—EXERCISE OF DISCRETION.

Discretionary power of the State land office board must be exercised in a reasonable manner (Act No. 155, Pub. Acts 1937, as amended).

3. SAME—EXERCISE OF DISCRETION—BIDS—COURTS—GOOD FAITH PRESUMED.

The exercise of discretion to accept or reject bids by a public officer will only be controlled by the courts when necessary to prevent fraud, injustice or the violation of a trust; good faith on the part of the officers in entering into a contract being presumed.

4. TAXATION—STATE LAND OFFICE BOARD—DISCRETION—RULES-BIDS.

The State land office board which had promulgated rules that it would not accept further offers for tax land at its disposal after 7 days after receipt of an offer to purchase and that the board reserved the right to reject any offers prior to delivery of deed or land contract, did not abuse its discretion in permitting a bid of $12,100 to be made 31 days after plaintiff made his bid of $9,100 for property appraised at $7,500, where on seventh, eighth and ninth days, defendant board's offices were closed due to holidays and lack of heat, and substantially higher bids were made on the tenth and subsequent days (State Administrative Code 1944, p. 426).

Appeal from Wayne; O'Hara (Chester P.), J. Submitted April 9, 1947. (Docket No. 21, Calendar No. 43,548.)    Decided June 27, 1947.

. Bill by Sol H. Kahn against State Land Office Board of the State of Michigan for decree declaring that he purchased certain real estate on sale. Anthony F. Posnik intervened. Decree for plaintiff. Defendant State Land Office Board appeals. Reversed.

*Fildew & DeGree,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Ben H. Cole, Ernest O. Zirkalos* and *Elbern Parsons,* Assistants Attorney. General, for defendant.

SHARPE, J.    This is a suit for an injunction and a declaratory judgment against the State land office board.    By stipulation followed by a court order Anthony F. Posnik was added as a party defendant.

The facts are not in dispute.    In September, 1942, certain property in the city of Detroit was offered for sale under the provisions of Act No. 155, § 8, Pub. Acts 1937, as amended (Comp. Laws Supp. 1945, § 3723–8, Stat. Ann. 1946 Cum. Supp. § 7.958), by the State land office board through its supervisory sales agent, Tri-County Land Agency, Inc., at an appraised value of $9,600.    No offers to purchase were received at this price.    A short time prior to February 11, 1946, the same property was re-appraised at $7,500.

On February 15, 1946, plaintiff made an offer of $9,100 with the Tri-County Land Agency, Inc., using the standard offer-to-purchase form.    February 22d of the same year fell on Friday and the manager of

the building in which the offices of the State land office. board and the Tri-County Land Agency, Inc., are located informed the manager of the Tri-County Land Agency, Inc., that heating in the building on Saturday would be discontinued. Whereupon, the manager of the Tri-County Land Agency, Inc., posted a notice of closing on the office bulletin board and sent out a standard form letter to all parties whose offers had been raised by plaintiff's offer that the office would be closed Friday, February 22, 1946, and that "you will have until Monday, February 25, to raise the above" offer.

Plaintiff called at the office of the agency on Saturday, February 23d and found it closed. On Monday, February 25th, plaintiff at about the hour of 11 a.m., again called at the office and was informed that the time for raising offers would not expire until 4 p.m. on that day. At about 4:15 p.m. on the same day, plaintiff again called the agency by telephone and was informed that a higher offer than his had been received. Two days later he received, through the mails, a notice of a receipt of a higher offer with instructions that he was permitted to raise the higher offer which had been received. Plaintiff did not enter an offer raising any of the four higher offers received subsequent to his first and only offer. The final of the four higher offers, received subsequent to the offer of plaintiff, was in the amount of $12,100 made by Anthony F. Posnik on March 18, 1946.

The cause came on for trial and the trial court held that the purchase offer made by plaintiff was a binding agreement; and that the refusal of the land office board to accept the balance of the purchase price and its refusal to give a conveyance of the land was arbitrary, unreasonable, capricious and contrary to the agreement. A decree was entered in harmony with the opinion filed by the trial court.

Defendant State land office board appeals and urges that the State land office board is empowered to reject any offer at any time prior to delivery of deed or land contract for such reason as it deems sufficient in all cases where the land is sold under the provisions of Act No. 155, § 8, Pub. Acts 1937, as amended; and that the State land office board would not be committing an abuse of discretion if it rejects any or all offers for lands being sold under the provisions of section 8 of the above act, as amended, under the circumstances of this case.

Under Act No. 155, § 11, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3723–11, Stat. Ann. 1946 Cum. Supp. § 7.961):

"The State land office board is authorized to promulgate such rules and regulations as may be necessary to carry out the purposes and provisions of this act."

In *Emmons* v. *State Land Office Board,* 305 Mich. 406, we said: "The board had a right to make reasonable rules and regulations."

Section 4 of rules and regulations adopted by the State land office board pertaining to the private sale of State-owned lands under section 8 of State land office board act by exclusive supervisory agents, Michigan Administrative Code 1944, p. 426, reads as follows:

"OFFER SUBJECT TO HIGHER OFFER FOR SEVEN DAYS. 4. Each offer will be held for a period of seven days from the day the offer is received. If the 7th day falls on a legal holiday the offer will be held by the board until the close of the following business day. During said seven-day period no further offer will be received unless such further offer is in an amount increased by $25, or not less than 10 per cent. of the minimum sale price, whichever is the larger."

Section 6 (pp. 426, 427) of the above rules, in part, reads as follows:

"Deed or land contract, as the case may be, shall be issued in the exact name, or names, as designated in the 'offer to purchase.' The board reserves the right to reject any offer at any time prior to delivery of deed or land contract, and in the event of rejection by the board, it will return the deposit accompanying the offer."

When plaintiff paid his initial deposit for the land involved in the case at bar, he received a receipt or acknowledgment of which the following is a copy:

"Date: 2–15–1946.
"The undersigned hereby acknowledges receipt of the sum of $1,820 as a deposit in accordance with the terms and provisions of the above offer, and agrees to accept no other offers for the sale of the above lands after 7 days from the date hereof while this offer remains in force.
                "TRI-COUNTY LAND AGENCY, INC.,
                "Supervisory Sales Agent for
                    "STATE LAND OFFICE BOARD,
                    "By: CHARLES E. PARADY."

A similar situation arose in *Porter v. State Land Office Board,* 308 Mich. 324. In that case plaintiffs on August 3, 1943, bid the sum of $255 for a parcel of land, which was in excess of its appraised valuation. On October 8, 1943, the village of Saugatuck had adopted a resolution requesting defendant board to convey the lands in question to the village for public purposes. Defendant land board rejected plaintiff's bid in order to make a conveyance to the village. Plaintiffs urged that the confirmation of sale, the payment of the bid price, and the certificate of purchase created a contract obligating

defendant board to execute and deliver a quitclaim deed of the lands in question. We there said:

"The memorandum of sale signed by plaintiffs and the certificate of sale signed by defendant board both provided in substance that the sale was subject to the provisions of the act and to the rules and regulations of the board. The board had the right under section 11 of the act to adopt reasonable rules and regulations. *Emmons* v. *State Land Office Board,* 305 Mich. 406. It adopted a rule whereby it reserved 'the right to reject any or all bids at any time prior to delivery of deeds or contracts' to purchasers. The subsale at which plaintiffs presented their bid was held August 3, 1943, and the board had not delivered deed to plaintiffs when, on October 8th, the village of Saugatuck requested a transfer of the lands for public purposes. If the board's rule was reasonable and valid, it had the right to reject plaintiffs' bid on October 8th. It is clear that the rule protected the right of municipalities under section 8 to acquire lands for public purposes 'at any time prior to delivery', of a deed to the highest bidder at a sale held in pursuance of said action. By reference, the rule in question became a part of the confirmation of sale and of the certificate of sale. The board could not have retained plaintiffs' payment and refused to give a deed beyond a reasonable length of time, but the period from the sale on August 3d to the request of the village on October 8th was not an unreasonable delay. Under the circumstances shown we cannot say that such rule was unreasonable.

"Plaintiffs contend that the rule deprived them of vested property rights as purchasers of the lands, without due process of law. The sale was held, plaintiffs' bid was presented, the price was paid, and the certificate of purchase was issued, subject to the provisions of the act and the rules and regulations of the board, that is, subject to the right of

the village of Saugatuck, under section 8, to acquire the lands for public purposes, and the right of the board, under its rules and regulations, to reject plaintiffs' bid at any time prior to delivery of deed. Therefore, as plaintiffs acquired no absolute right to the lands, the board's rejection of their bid did not deprive them of property rights without due process of law.''

It should be noted that the reason for rejecting plaintiffs' bid in the above case was because the village of Saugatuck requested a transfer of the lands for public purposes, while in the case at bar plaintiff's bid was neither accepted nor rejected owing to the fact that a restraining order was issued when plaintiff began the instant suit enjoining the board from disposing of the property to any person other than plaintiff.

We can assume that the board would have accepted the higher bid if it had not been restrained by a court order. It should be noted that the certificate of sale in each case provided in substance that the sale was subject to the provisions of the act and to the rules and regulations of the board.

In view of the fact that a declaratory decree is sought, we shall discuss the question of the right of the board to arbitrarily reject any bid. The discretion of the board must be exercised in a reasonable manner.

In *Taylor* v. *Robertson,* 16 Utah, 330, 336 (52 Pac. 1), it was said:

''Discretion, when vested in an officer, however, does not mean absolute or arbitrary power. The discretion must be exercised in a reasonable manner, and not maliciously, wantonly, and arbitrarily to the wrong and injury of another. This is held to be the rule applicable to public officers who are bound to exercise their deliberate judgment in the

discharge of their official duties, and is applicable to all inferior magistrates and others called to the performance of functions in their nature and character quasi-judicial, while acting within their jurisdiction and the legal scope of their powers as fixed by law.''

In *Leavy* v. *City of Jackson*, 247 Mich. 447, we quoted with approval from 3 McQuillin on Municipal Corporations (2d Ed.), § 1340, as follows:

'' 'The exercise of discretion to accept or reject bids will only be controlled by the courts when necessary to prevent fraud, injustice or the violation of a trust. The court will indulge the presumption that the authorities acted in good faith in awarding the contract.' ''

In our opinion the action of the board in permitting bid to be made on March 18th, under the circumstances of this case, was not an arbitrary act nor an abuse of discretion. It, therefore, follows that plaintiff's bill of complaint should be and is dismissed and the restraining order dissolved, with costs to State land office board.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.